NOTICE
Decision filed 08/04/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250367-U

NO. 5-25-0367

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| EDDIE SARDON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Crawford County. |
| | ) | |
| v. | ) | No. 24-MR-13 |
| | ) | |
| CHAD JENNINGS, | ) | Honorable |
| | ) | Matthew J. Hartrich, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CLARKE delivered the judgment of the court.
Justices Boie and Vaughan concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court did not err in granting the defendant's motion to dismiss the plaintiff's *mandamus* petition, where the plaintiff failed to exhaust all administrative remedies before initiating the *mandamus* action.

¶ 2     The plaintiff, Eddie Sardon, was an inmate in the Illinois Department of Corrections (IDOC) and was incarcerated at the Robinson Correctional Center (Robinson), where he was serving sentences for his convictions in Bureau County. The plaintiff filed a *pro se* petition for a writ of *mandamus* against the defendant, Chad Jennings, who was the warden at Robinson. In that petition, the plaintiff sought an order compelling the defendant to award him 180 days of credit against his prison sentence. The defendant moved to dismiss the *mandamus* petition, on grounds that included the plaintiff's failure to exhaust administrative remedies. The circuit court granted the motion to dismiss. The plaintiff appealed. This court affirms the judgment.

1

¶ 3                    I. BACKGROUND

¶ 4            A. Plaintiff's Petition for *Mandamus* Relief

¶ 5      On June 28, 2024, the plaintiff filed, in the circuit court of Crawford County, a *pro se* petition for *mandamus* relief against the defendant, pursuant to section 14-101 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/14-101 (West 2022)). According to the plaintiff, on January 2, 2024, he completed the criminal law course offered through the advanced paralegal program at Blackstone Career Institute (Blackstone). The plaintiff further alleged that this course was an approved educational program at IDOC, and his completion of the course entitled him to 180 days of credit against his prison sentence. The plaintiff then asserted: "As of the date of this filing, the records office supervisor, under the direction of the warden, has refused to credit the amount of sentence credit that I am owed." As a remedy, the plaintiff sought the issuance of a *mandamus* order compelling the defendant to award him 180 days of sentence credit.

¶ 6      The *mandamus* petition was not accompanied by any document purporting to verify any of the allegations contained in the petition. For example, there was no document relating to the records office supervisor's alleged refusal to grant programming credit against the plaintiff's sentence.

¶ 7      On July 19, 2024, the plaintiff filed a *pro se* amended petition for *mandamus* relief. The plaintiff claimed that, in addition to the 180 days of sentence credit for his completion of a criminal law course, he also was entitled to 10 days of sentence credit for his completion of an anger-management program. Like the initial *mandamus* petition, the amended petition was unaccompanied by any document purporting to verify any of its allegations. In the instant appeal, the plaintiff does not pursue this claim about 10 days of credit for completion of an anger-

2

management program, and therefore, he has forfeited any argument related to that claim. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 8                                  B. Defendant's Motion to Dismiss

¶ 9        On August 1, 2024, the defendant filed, under section 2-619.1 of the Procedure Code (735 ILCS 5/2-619.1 (West 2022)), a motion to dismiss the plaintiff's *mandamus* petition. In the first part of the motion, the defendant stated that the *mandamus* petition should be dismissed under section 2-615 of the Procedure Code (*id.* § 2-615) because the plaintiff (1) failed to attach to the petition the necessary documents showing that he had completed the Blackstone course or that the course was eligible for sentence credit, (2) failed to include in his petition any indication that he had notified Robinson officials of his not receiving sentence credit, and (3) failed to include in his petition any indication that he had exhausted the available IDOC administrative remedies before initiating his *mandamus* action. In the second part of the motion, the defendant stated that the *mandamus* petition should be dismissed under section 2-619 of the Procedure Code (*id.* § 2-619) because the plaintiff was not actually entitled to the sentence credit he sought because he failed to submit documentation showing completion of a course that had been approved for sentence credit.

¶ 10       The defendant's section 2-619.1 motion to dismiss was accompanied by an affidavit from Jeff Patchett, signed on August 1, 2024. In the affidavit, Patchett averred that he was an IDOC employee who served as the "Education Facility Administrator" at Robinson. One part of Patchett's job was to "administer sentence credit for successful completion of certain approved educational programs through the creation and distribution of award memos." According to Patchett, "[c]ertain courses" provided by Blackstone were "approved and eligible for sentence credit," although "not all" of Blackstone's courses were eligible. Patchett further averred: "I explain to all individuals regarding Blackstone that I need three documents to create an award

3

memo: (1) the certificate of completion for the legal assistant/paralegal program, (2) the award letter, and (3) the transcript." According to Patchett, the plaintiff "did not submit the required documentation for an approved Blackstone course."

¶ 11          C. Plaintiff's Response to Defendant's Motion to Dismiss

¶ 12   On August 22, 2024, the plaintiff filed a *pro se* response to the defendant's section 2-619.1 motion to dismiss. In his response, the plaintiff addressed, for the first time, the exhaustion of administrative remedies.

¶ 13   The plaintiff stated that in January 2024, he "completed an approved course of study through Blackstone" and submitted "the required documents" to Patchett, who informed the plaintiff that "he would send 'an award memo' " to the assistant warden. Patchett made clear to the plaintiff that it was the assistant warden, and not he, who was responsible for awarding sentence credit. "[T]wo months" after submitting the required documents to Patchett, the plaintiff had not heard anything about the sentence credit he was owed for the criminal law course. Therefore, on March 18, 2024, the plaintiff filed an IDOC grievance, seeking sentence credit for the Blackstone course. His institutional counselor, A. Correll, responded in writing to the plaintiff's grievance, stating that the records office supervisor, K. Redman, had said that the sentence-credit issue "will be processed as time allows." The plaintiff then "forwarded his grievance to the grievance officer on April 23, 2024," but the grievance officer "did not respond to [the plaintiff's] grievance within the 60-day time requirement." According to the plaintiff, the grievance officer's failure to respond within 60 days "made the remedy unavailable." Once the 60 days had passed, the plaintiff filed his *mandamus* petition on June 28, 2024. The defendant was served with a summons in the *mandamus* action. On July 15, 2024, the grievance officer "issued a moot response to [the plainitff's] grievance. The response is moot because the 60-day time requirement had passed." The plaintiff

4

closed his response to the dismissal motion by stating that he had a clear right to the *mandamus* relief requested because (1) he "has provided documentation showing his completion of an IDOC approved course," and (2) he has shown that he exhausted his administrative remedies before filing his *mandamus* petition.

¶ 14 Accompanying the plaintiff's response to the dismissal motion were:

(1) A certificate from Blackstone dated January 2, 2024, indicating that the plaintiff had fulfilled all the requirements for the criminal law course.

(2) A two-page "grade report" from Blackstone, which showed the plaintiff's results on the six exams in criminal law.

(3) A one-page IDOC grievance form, completed by the plaintiff on March 18, 2024. In that grievance form, the plaintiff complained that he had not received sentence credit for (1) his completion of "two (2) separate work assignments" and (2) his completion of "an Advanced Paralegal Course in Criminal Law." As relief, he requested that IDOC award him earned credit against his sentence. At the bottom of the grievance form was a section for a "Counselor's Response" to the grievance. In this section, the plaintiff's institutional counselor indicated that she had received the grievance form on March 30, 2024, and that the counselor's response to the grievance was made on April 2, 2024. Counselor A. Correll wrote the following response: "Per R/O Supervisor K. Redman, 'Records has 4 calendars to award. These will be processed as time allows.' "

(4) A one-page handwritten note dated April 18, 2024, from the plaintiff to the grievance officer. In the note, the plaintiff complained about the counselor's response to his grievance form of March 18, 2024. He appeared to think that K. Redman had been

5

brusque and dismissive toward him when she said that she would process his sentence credit as time allowed.

(5) A one-page "grievance officer's report," responding to the plaintiff's grievance. The report indicated that the grievance officer received the plaintiff's grievance on April 23, 2024, and that he reviewed the grievance and the counselor response on July 15, 2024. In the "nature of the grievance" section of the report, the grievance officer wrote that the plaintiff complained of completing "multiple work assignments and programs" but not receiving sentence credit for them. In the "facts reviewed" section of the report, the grievance officer noted that the plaintiff had been awarded sentence credits for three separate work assignments. However, the grievance officer did not write anything about the plaintiff's completion of the criminal law course, or about earned program sentence credit for the course's completion. The grievance officer's "recommendation" was as follows: "Based upon review of all available information, this grievance officer recommends that the following grievance be affirmed. Grievant had been awarded pending [Earned Program Sentence Credit] for completed work contracts." Again, there was no mention of credit for completion of the criminal law course. Directly below the grievance officer's recommendation was a place for the chief administrative officer to indicate whether he concurred or did not concur in the grievance officer's recommendation. On July 17, 2024, the chief administrative officer—*i.e.*, the prison warden and the defendant here, Chad Jennings—indicated that he concurred in the grievance officer's recommendation and signed his name. At the very bottom of the grievance officer's one-page response was a place for the plaintiff to indicate a desire to appeal the chief administrative officer's decision to the IDOC director. The instructions for this section read as follows:

"I am appealing the Chief Administrative Officer's decision to the [IDOC] Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)"

Directly underneath this paragraph, there were lines for an inmate-grievant to sign his name, to write his inmate identification number, and to write the date of his signing, if the inmate-grievant wished to appeal. However, this portion of the IDOC grievance officer's "response" was left blank. The plaintiff did not sign his name, etc., to indicate that he wished to appeal to the IDOC director.

¶ 15        D. Defendant's Reply in Support of His Motion to Dismiss

¶ 16    On September 4, 2024, the defendant filed a reply in support of his motion to dismiss. The defendant stated that the plaintiff's response had introduced "a number of new facts" in an attempt to combat the arguments presented in the defendant's motion to dismiss. However, according to the defendant, the plaintiff "cannot rely on facts that are not apparent from the face of his petition in responding to a Section 2-615 motion." The defendant asserted: "Within the four corners of the [p]etition, it is not clear that [the plaintiff] is entitled to sentence credit. [The plaintiff] did not include any documentation showing that he completed a Blackstone course, or that said course was eligible for sentence credit." In addition, "[a]dministrative remedies were available to [the plaintiff], he simply failed to wait for the process to play out."

¶ 17    On October 10, 2024, the plaintiff filed a "summary judgment or leave to file a second amended petition." The plaintiff argued that in his response to the defendant's motion to dismiss, he had not offered any new evidence that was outside the four corners of his petition. He stated

that in his response, he presented to the court "the same documents" that he had submitted to Patchett, the education facility administrator at Robinson, in January 2024. The plaintiff also insisted that he had, in fact, exhausted his administrative remedies before filing his *mandamus* petition with the circuit court. He stated that he "waited a full three months" between the time he submitted the required documents to Patchett and the time he filed a grievance in April 2024. He noted that the grievance officer did not answer his specific grievance about the criminal law course. The plaintiff stated that the defendant "has not offered any evidence" to show that he "is not entitled" to the *mandamus* relief he sought.

¶ 18        E. Circuit Court's Decision on Defendant's Motion to Dismiss

¶ 19    On November 12, 2024, the circuit court held a hearing on the defendant's section 2-619.1 motion to dismiss. The record on appeal does not include a transcript of this hearing. The defendant and the plaintiff *pro se* appeared via telephone and presented their arguments, pro and contra, on the motion. The court took the matter under advisement.

¶ 20    On January 17, 2025, the circuit court entered a docket-entry order that granted the defendant's motion to dismiss the plaintiff's *mandamus* petition. The court stated that the plaintiff had failed to demonstrate (1) that he had a clear, affirmative right to *mandamus* relief; (2) that the defendant had a clear duty to act; and (3) that the defendant had clear authority to comply with the *mandamus* order that the plaintiff sought. The *mandamus* petition was dismissed.

¶ 21    On February 13, 2025, the plaintiff filed a *pro se* motion to reconsider the dismissal. On April 14, 2025, the circuit court denied the plaintiff's motion to reconsider. On April 30, 2025, the plaintiff filed a *pro se* notice of appeal from the order granting the defendant's motion to dismiss, thus perfecting the instant appeal.

¶ 22                                    II. ANALYSIS

¶ 23     This appeal is from the circuit court's order that granted the defendant's motion to dismiss the plaintiff's petition for *mandamus* relief. For the reasons that follow, this court affirms the dismissal order on the grounds that the plaintiff did not exhaust the IDOC's administrative remedies before initiating the *mandamus* action.

¶ 24     This court begins with a preliminary matter. Subsequent to the plaintiff's filing his notice of appeal in this case, and specifically on June 23, 2025, the plaintiff was released from prison and began his term of mandatory supervised release (MSR), which he is scheduled to finish on June 23, 2029. This information was obtained from the "inmate search" section of the IDOC's website (https://www2. illinois.gov/idoc/Offender/ Pages/InmateSearch.aspx (last visited July 28, 2026)), of which this court may take judicial notice under the "public records" exception to the hearsay rule. *Cordrey v. Prisoner Review Board*, 2014 IL 117155, ¶ 12. Despite the fact that the plaintiff's ultimate goal is 180 days of credit against his prison sentence and the plaintiff has now completed his prison sentence, this case is not moot. "A case becomes moot where the occurrence of events since filing of the appeal makes it impossible for the reviewing court to render effectual relief." *People v. Jackson*, 199 Ill. 2d 286, 294 (2002). Where an offender has been released from prison but remains on MSR, a reduction in his prison sentence would affect how long he could be reincarcerated for a violation of his MSR. *Id.* Here, the plaintiff has been released from prison, but he remains on MSR. For that reason, this appeal is not moot. This court now turns to the merits of the appeal.

¶ 25     "*Mandamus* is an extraordinary remedy used to compel a public officer to perform nondiscretionary official duties." *People ex rel. Senko v. Meersman*, 2012 IL 114163, ¶ 9. The writ of *mandamus* provides affirmative, rather than prohibitory, relief. *Chicago Bar Ass'n v. Illinois*

9

*State Board of Elections*, 161 Ill. 2d 502, 507 (1994). To obtain a writ of *mandamus*, "the plaintiff must establish a clear right to the requested relief, a clear duty of the public officer to act, and clear authority of the public officer to comply with the order." *McFatridge v. Madigan*, 2013 IL 113676, ¶ 17. The plaintiff must "set forth *every* material fact needed to demonstrate" these three elements. (Emphasis in original.) *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 433-34 (2007).

¶ 26     For *mandamus* relief to be appropriate, there must be no other fully adequate remedy available to the plaintiff. *Cordrey*, 2014 IL 117155, ¶ 18. Consistent with this dictate is the doctrine that *mandamus* relief will not issue unless the plaintiff has exhausted all the administrative remedies available to him. "The doctrine of exhaustion of administrative remedies holds that a party aggrieved by an administrative decision cannot seek judicial review without first pursuing all available administrative remedies." *Canel v. Topinka*, 212 Ill. 2d 311, 320 (2004). "The reasons for the exhaustion requirement are to allow the administrative agency to fully develop and consider the facts of the case before it, to allow the agency to utilize its expertise, and to allow the aggrieved party to obtain relief from the agency, thus making judicial review unnecessary." *Id.* at 320-21. An IDOC inmate, for example, must exhaust the IDOC's administrative procedures—pursuing any and all administrative remedies available for grievances—before he initiates a *mandamus* action. *Johnson v. Department of Corrections*, 368 Ill. App. 3d 147, 150 (2006) (where the plaintiff failed to exhaust his administrative remedies before filing a *mandamus* petition, he "failed to state a clear right to relief," thus defeating his claim).

¶ 27     Here, the defendant's motion to dismiss the *mandamus* petition included a section 2-615 motion to dismiss based upon the pleadings. 735 ILCS 5/2-615 (West 2022). The defendant

pointed out that the plaintiff, *inter alia*, failed to include in his petition any indication that he had exhausted his administrative remedies before initiating his *mandamus* action.

¶ 28 A section 2-615(a) motion to dismiss tests the legal sufficiency of the complaint based on defects apparent on its face. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 25. While a plaintiff is not required to prove his case at the pleading stage, he must allege sufficient facts to state all the elements which are necessary to sustain his cause of action. *Visvardis v. Eric P. Ferleger, P.C.*, 375 Ill. App. 3d 719, 724 (2007). A section 2-615(a) motion to dismiss presents the question of whether the facts alleged in the complaint—viewed in the light most favorable to the plaintiff (*i.e.*, the nonmoving party), and taking as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts—are sufficient to state a cause of action upon which relief may be granted. *Jane Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 16. The court should disregard factual conclusions that are unsupported by specific factual allegations and unreasonable inferences. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31.

¶ 29 To survive a section 2-615 motion to dismiss, a plaintiff "must allege facts sufficient to bring a claim within a legally recognized cause of action." *Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155, 161 (2009). "[A] cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). In ruling on a section 2-615 motion, the court only considers (1) those facts apparent from the face of the pleadings, (2) matters subject to judicial notice, and (3) judicial admissions in the record. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005). Because a section 2-615 motion

11

raises issues of law, this court reviews orders granting section 2-615 dismissals *de novo*. *Heastie v. Roberts*, 226 Ill. 2d 515, 530-31 (2007).

¶ 30    Here, the plaintiff, in his *mandamus* petition filed on June 28, 2024, failed to allege facts sufficient to show that he had exhausted his IDOC administrative remedies before he filed his petition in the circuit court. He thereby failed to state a clear right to relief, which defeated his *mandamus* claim. *Johnson*, 368 Ill. App. 3d at 150. The plaintiff was precluded from *mandamus* relief because he failed to allege the exhaustion of prison administrative remedies.

¶ 31    In the plaintiff's response to the defendant's motion to dismiss his *mandamus* petition, which the plaintiff filed on August 22, 2024, the plaintiff stated that he "forwarded his grievance to the grievance officer on April 23, 2024," but the grievance officer "did not respond to [the plaintiff's] grievance within the 60 day time requirement," and this failure to respond within 60 days "made the remedy unavailable," leading the plaintiff to file his *mandamus* petition with the circuit court on June 28, 2024. However, even if the plaintiff had included this information in his *mandamus* petition, it would not have been sufficient to satisfy the exhaustion-of-remedies doctrine. The plaintiff should have allowed the grievance officer more than 60 days to respond to his grievance, and he should not have been so quick to file a *mandamus* petition with the circuit court.

¶ 32    Under the Illinois Administrative Code, an offender imprisoned in IDOC "may file a written grievance on a grievance form that shall be made available in all living units." 20 Ill. Adm. Code 504.810(a) (eff. Apr. 1, 2017). "Grievances shall be addressed to [the offender's] institutional counselor; however, complaints concerning discipline or sexual abuse shall be sent by the offender directly to the Grievance Officer." *Id.* "Grievances shall be reviewed and a written response provided to the offender." 20 Ill. Adm. Code 504.830(a) (eff. Apr. 1, 2017). "The

12

Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer [*i.e.*, the warden] within two months after receipt of the written grievance, when reasonably feasible under the circumstances." 20 Ill. Adm. Code 504.830(e) (eff. Apr. 1, 2017). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

¶ 33    If an inmate receives the response from the chief administrative officer, and the complaint still has not been resolved to the inmate's satisfaction, the inmate "may appeal in writing to the [IDOC] Director." 20 Ill. Adm. Code 504.850(a) (eff. Apr. 1, 2017). The inmate must attach to the appeal copies of the grievance officer's report and the chief administrative officer's decision. *Id.* "The appeal must be received by the Administrative Review Board within 30 days after the date of the [chief administrative officer's] decision." *Id.*

¶ 34    IDOC regulations "were designed to provide guidance to prison officials in the administration of prisons." *Ashley v. Snyder*, 316 Ill. App. 3d 1252, 1258 (2000). They "were *never* intended to confer rights on inmates." (Emphasis in original.) *Id.*

¶ 35    The IDOC regulations did not confer upon the plaintiff a right to receive a response from the grievance officer within 60 days, or two months, after submitting his grievance. The regulations were not intended to confer such a right upon him. The regulations do not fix a deadline for the grievance officer's reply to a grievant. The most that they do is to set a two-month deadline for the grievance officer to report his findings and recommendations to the warden, "when reasonably feasible under the circumstances." 20 Ill. Adm. Code 504.830(e) (eff. Apr. 1, 2017). The rule is more aspirational than legally binding. The plaintiff should have given the grievance officer more time to respond, instead of rushing his *mandamus* petition to the Crawford County circuit court. In addition, the plaintiff chose not to appeal the decision of the chief administrative officer to the

13

IDOC's director. The plaintiff's failure to appeal to the director represents another failure by the plaintiff to avail himself of an IDOC administrative remedy.

¶ 36                                    III. CONCLUSION

¶ 37    The plaintiff claimed to be entitled to credit against his prison sentence, but in pursuit of that credit, he failed to exhaust the IDOC's administrative remedies. Due to that failure, the plaintiff could not establish a clear right to a court order compelling an award of the credit, and his *mandamus* claim was thus defeated. The circuit court did not err in granting the defendant's motion to dismiss. The judgment is affirmed.


¶ 38    Affirmed.